1  KENNETH S. GAINES, ESQ. SBN 049045
   ken@gaineslawfirm.com
2  DANIEL F. GAINES, ESQ. SBN 251488
   daniel@gaineslawfirm.com
3  **GAINES & GAINES, APLC**
   21550 Oxnard Street, Suite 980
4  Woodland Hills, CA 91367
   Telephone: (818) 703-8985
5  Facsimile: (818) 703-8984

6  SCOTT A. MILLER, ESQ.  SBN 230322
   scott.miller@smillerlawoffices.com
7  **LAW OFFICES OF SCOTT A. MILLER, APC**
   16133 Ventura Blvd., Ste. 645
8  Encino, CA 91436
   Telephone: (818) 788-8081
9  Facsimile: (818) 788-8080

10 STEVEN L. MILLER, ESQ. SBN 106023
   stevenlmiller@sbcglobal.net
11 **STEVEN L. MILLER, APLC**
   16133 Ventura Blvd., Ste. 645
12 Encino, CA 91436
   Telephone: (818) 986-8900
13 Facsimile: (818) 990-7900

14 Attorneys for Plaintiff Kambiz Batmanghelich
   and Class Counsel

15
              **UNITED STATES DISTRICT COURT**
16
             **CENTRAL DISTRICT OF CALIFORNIA**
17
                  **WESTERN DIVISION**
18

19 KAMBIZ BATMANGHELICH, on          **CASE NO.: CV 09-9190 VBF (JCx)**
   behalf of himself and all others
20 similarly situated, and on behalf of the   **NOTICE OF UNOPPOSED**
   general public,                            **MOTION AND UNOPPOSED**
21                                            **MOTION FOR FINAL APPROVAL**
              Plaintiffs,                     **OF CLASS ACTION SETTLEMENT**
22
        v.
23                                            **DATE:** September 12, 2011
   SIRIUS XM RADIO, INC., a                   **TIME:** 1:30 P.M.
24 Delaware corporation, STREAM              **COURTROOM:** 9
   INTERNATIONAL INC., a Delaware             **JUDGE:** Hon. Valerie Baker Fairbank
25 corporation, and DOES 3 through 50,
   inclusive,
26
              Defendants.
27

28

---

**TO THE COURT AND TO ALL PARTIES:**

PLEASE TAKE NOTICE that on September 12, 2011 at 1:30 p.m., in Courtroom 9 of the above-entitled Court, located at 312 N. Spring Street, Los Angeles, California 90012, Plaintiff Kambiz Batmanghelich will, and hereby does, move this Court for an order granting final approval of the class action settlement in this Action. This motion is unopposed by Defendants.

This motion will be based on this Notice and accompanying Memorandum of Points and Authorities, the Declarations of Kenneth S. Gaines, Steven L. Miller, Scott A. Miller, Daniel F. Gaines and Stephen H. Krumm, the Declaration of Class Representative Kambiz Batmanghelich, the Declarations of Jennifer M. Keough of GCG, Inc., the Amended Stipulation of Settlement (including exhibits), all filed herewith, and on such further evidence and argument as may be presented at the hearing.

DATED: July 22, 2011                Respectfully submitted,

                                    GAINES & GAINES,
                                    A Professional Law Corporation


                                    By:   /s/  Kenneth S. Gaines
                                          KENNETH S. GAINES
                                          DANIEL F. GAINES
                                            Attorneys for Plaintiff Kambiz
                                            Batmanghelich and Class Counsel

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................... 1

II.   FACTUAL BACKGROUND ................................................... 2

III.  SUMMARY OF THE SETTLEMENT TERMS ....................... 5

     A.    The Settlement Class ................................................ 5

     B.    Settlement Consideration ......................................... 5

          1.    Payment to Plaintiff and Class Members .................... 6

          2.    Attorneys' Fees and Costs to Class Counsel ............... 6

     C.    The Release by Plaintiff and Class Members ......................... 7

IV.  THE COURT-APPROVED NOTICE PROGRAM ........................... 7

V.   ARGUMENT ........................................................................ 8

     A.    The Class Members Received the Best Practicable Notice ................... 9

     B.    Final Settlement Approval is Warranted ............................... 10

          1.    Each of the Relevant Criteria Supports Final Approval ... 11

               a.  The Strength of Plaintiff's Case Turns on an Untested Area of Law Creating Significant Risks to Plaintiff and Class Members ............................................. 12

               b.  The Complexity, Expense and Likely Duration of Continued Litigation Weighs in Favor of Final Approval ................................................. 13

               c.  The Risk of Maintaining Class Action Status Through Trial ................................................ 15

               d.  The Value of the Settlement Favors Final Approval .. 15

               e.  Disclosure of Documents and Data Demonstrating the Strengths and Weaknesses of this Action was Completed Prior to Entering into the Settlement ......................... 16

               f.  The Experience and Views of Counsel Favor Final Approval ................................................. 17

               g.  The Presence of a Governmental Participant ............. 17

1

**TABLE OF CONTENTS**
(continued)

2

3

h.  Class Members' Positive Reaction to the Settlement
    Favors Final Approval..................................................17

C.   Final Class Certification is Appropriate................................................18

  1.   FRCP 23(a) Requirements For Class Certification Are Met
       ........................................................................................18

    a.  Numerosity..................................................................18

    b.  Commonality .............................................................19

    c.  Typicality ..................................................................20

    d.  Adequacy of Representation....................................21

  2.   FRCP 23(b)(3) Requirements For Class Certification Are
       Met ...........................................................................23

    a.  Predominance............................................................23

    b.  Superiority ................................................................24

D.   Defendants Have Provided Notice to the Attorney Generals Pursuant to
     the Class Action Fairness Act, 28 U.S.C. § 1715 .................................24

VI.   CONCLUSION ..............................................................................25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## Federal Statutes

28 U.S.C. § 1332(d) ........................................................................ 2, 24

28 U.S.C. § 1715 ........................................................................... 24, 25

Fed. R. Civ. P. 23 ...........................................................................passim

## California Statutes

California Civil Code section 1542 ............................................................ 7

California Civil Code section 1781 ............................................................ 9

California Penal Code, section 630 *et seq.* ........................................... 2, 3, 5

California Penal Code, section 632. ..................................................... 12, 13

California Penal Code section 637.2 ..................................................... 2, 3, 15

## Non-California Statutes

Fla. Stat. Ann. § 934.03 *et seq.* ....................................................... 5, 15

Md Cts. & Jud. Proc. Code Ann. § 10-402(a) *et seq.* ............................... 5, 15

Nev. Rev. Stat. § 200.620 *et seq.* ...................................................... 5, 15

NH Rev. Stat. Ann. § 570-A:2 *et seq.* ................................................. 5, 15

## Federal Cases

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................... 23

*Bateman v. American Multi-Cinema, Inc.*,
    623 F.3d 708 (9th Cir. 2010) ................................................. 13

NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT

# TABLE OF AUTHORITIES
(continued)

*Churchill Village, L.L.C. v. GE*,
    361 F.3d 566 (9th Cir. 2004) ........................................................................ 2, 8

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................................ 10, 20

*Cox v. American Cast Iron Pipe*,
    784 F.2d 1546 (11th Cir. 1986) ........................................................ 18, 20, 23

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ..................................................................................... 9

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980) .................................................................. 17

*Franklin v. Kaypro*,
    884 F.2d 1222 (9th Cir. 1989) ..................................................................... 8

*Gen. Tel. Co. of the SW v. Falcon*,
    457 U.S. 147 (1982) ................................................................................... 20

*Griffin v. Carlin*,
    755 F.2d 1516 (11th Cir. 1985) ................................................................ 21

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................. passim

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ................................................................ 20, 21

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) .................................................................... 15

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .................................................................... 12

*In re Omnivision Technologies, Inc.*,
    559 F.Supp.2d 1036 (N.D. Cal. 2008) ...................................................... 22

NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF AUTHORITIES**

(continued)

*In re Pet Food Products Liability Litig.*,
    629 F.3d 333 (3d. Cir. 2010) ........................................................................... 19

*In re State Police Litigation*,
    888 F.Supp. 1235 (D. Conn. 1995) ................................................................ 22

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ............................................................................. 20

*In re Worldcom, Inc. Sec. Litig.*,
    388 F.Supp.2d 319 (S.D.N.Y. 2005) .............................................................. 22

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ......................................................................... 12

*Linney v. Cellular Alaska P'ship*,
    Nos. C-96-3008 DLJ, C-97-0203 DLJ, C-97-0425 DLJ, C-97-0457 DLJ, 1997
    WL 450064 (N.D. Cal. July 18, 1997) ........................................................... 12

*Mullane v. Central Hanover Bank & Garretson Company*,
    339 U.S. 306 (1950) ........................................................................................... 9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................... 12

*Officers for Justice v. Civ. Serv. Comm'n of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................... 13

*Petrovic v. Amoco Oil Corp.*,
    200 F.3d 1140 (8th Cir. 1999) ................................................................... 19, 20

*Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*
    323 F.Supp. 364 (E.D. Pa. 1970) ..................................................................... 9

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ........................................................................................... 9

NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT

# TABLE OF AUTHORITIES
(continued)

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ........................................................................12

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ................................................................8, 10

*Wal-Mart Stores, Inc. v. Dukes,*
    __ S. Ct. __, 2011 WL 2437013 (June 20, 2011) ..........................................18

*Young v. Katz,*
    447 F.2d 431(5th Cir. 1971) ......................................................................14

## California Cases

*Cartt v. Superior Court,*
    50 Cal.App.3d 960 (1975) .......................................................................9, 10

*Clark v. American Residential Services, LLC,*
    175 Cal.App.4th 785 (2009) .........................................................................16

*Dunk v. Ford Motor Co.,*
    48 Cal.App.4th 1794 (1996) ...................................................................16, 19

*Kearney v. Solomon Smith Barney,*
    39 Cal.4th 95 (2006) ...............................................................................5, 15

*Legge v. Nextel Commc'ns, Inc.,*
    No. CV 02-8676, 2004 U.S. Dist. LEXIS 30333 (C.D. Cal. June 25, 2004)
    ................................................................................................................13

*Najarian v. Avis Rent a Car Sys.,*
    No. CV 07-0588, 2007 U.S. Dist. LEXIS 59932 (C.D. Cal. June 13, 2007)
    ..........................................................................................................12, 13

*Najarian v. Charlotte Rousse, Inc.,*
    No. CV 07-0501, 2007 U.S. Dist. LEXIS 59879 (C.D. Cal. June 12, 2007)
    ................................................................................................................13

NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT

# TABLE OF AUTHORITIES
(continued)

*Soualian v. Int'l Coffee & Tea LLC*,
No. CV 07-0502, 2007 US. Dist. LEXIS 44208 (C.D. Cal June 11, 2007)....13

*Spikings v. Cost Plus Inc.*,
No. CV 06-8125, 2007 U.S. Dist. LEXIS 44214 (C.D. Cal. May 25, 2007)
.................................................................................................................13

## Treatises

4 Alba Conte & Herbert B. Newberg,
*Newberg on Class Actions*, § 11.41 (4th ed. 2002)....................................8, 10

Manual for Complex Litigation, Fourth § 21.632- 34 (4th ed. 2004)
.................................................................................................................11

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2
## I.        INTRODUCTION

3           Plaintiff Kambiz Batmanghelich, on behalf of himself and others similarly

4 situated, and Defendants Sirius XM Radio Inc. ("Sirius") and Stream International

5 Inc. ("Stream") (collectively, "Defendants"), seek final approval of their class action

6 settlement.  This motion follows a successful settlement administration authorized by

7 the Court's March 14, 2011 Order Granting Preliminary Approval of the Settlement.

8 *See* Ex. A to the Declaration of Kenneth S. Gaines ("Gaines Decl.")  (Docket No. 65).

9           Subject to Court approval, Plaintiff has settled his claims and those of class

10 members from California, Nevada, Maryland, Florida, and New Hampshire for total

11 consideration of $9,480,000 (which includes all settlement payments, settlement

12 administration, Class Counsel's fees and costs, and the representative Plaintiff's

13 service payment).  No portion of the settlement payment shall revert to Defendants.

14           By a separate motion filed concurrently, Plaintiff moves for an award of

15 attorneys' fees and costs, approval of the claims administrator's fees, and approval of

16 the service payment to be paid to the Class Representative.

17           Following a comprehensive notice program, approximately 15,157 class

18 members have submitted valid and timely claims.[1]   Based on the valid claims

19 submitted thus far, if the Settlement receives final approval, approximately 8,006

20 California class members shall receive settlement payments of approximately $734

21 each and approximately 7,151 class members residing in Nevada, Maryland, Florida

22 and New Hampshire shall be paid approximately $146 each.   Supplemental

23 Declaration of Jennifer M. Keough Regarding Claims Administration ("Keough

24 Claims Decl.") at ¶ 2; Gaines Decl. at ¶ 23.  These are substantial cash payments in

25 relation to the harm alleged.

26

27 ───────────────
[1] Class Members have 180 days from the date of preliminary approval – September

28 10, 2011 – to submit a claim form.

1
2
3

Notably, of over one million potential class members, only 32 individuals have opted-out of the settlement, and through the date of filing of this motion, not one class member has submitted an objection.[2]  Keough Claims Decl. at ¶¶ 3-4.

4
5
6
7
8
9

The proposed Settlement satisfies all of the criteria for final settlement approval under federal law because it is fair, adequate, and reasonable.  S*ee Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 575-76 (9th Cir. 2004).  The overwhelmingly positive response of the Class Members to the Settlement – including a substantial participation rate, minimal opt-outs, and zero objections – provides strong support that final settlement approval is appropriate.

10
11
12
13
14

Because the Settlement provides a substantial benefit to all Class Members and will protect the privacy interests of all persons who engage in telephone communications with Defendants in the future, Plaintiff requests that the Court approve the Settlement as fair, adequate, and reasonable, and enter judgment accordingly.

15

**II.**       **FACTUAL BACKGROUND**

16
17
18
19
20
21
22
23

On November 10, 2009, Plaintiff filed a Class Action Complaint against Sirius in the Los Angeles Superior Court, which was removed pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  In his Complaint (later amended), Plaintiff alleges Sirius surreptitiously recorded telephone calls without its customers' knowledge or consent.  The original Complaint alleged a violation of California Penal Code, section 630 *et. seq.*, among other things, and sought statutory damages pursuant to California Penal Code section 637.2 of $5,000 for each unlawful recording.  Gaines Decl. at ¶¶ 7-8.

24
25
26
27
28

---

[2] The opt-out deadline was June 26, 2011.  Class Members had until August 5, 2011 to submit an objection to the Settlement.

NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    Shortly after removal, Sirius filed a third party claim against Stream, a
2 company which handled some of Sirius' call center operations.   Stream was also
3 added as a defendant by Plaintiff.  Gaines Decl. at ¶ 9.

4    Stream filed a cross-claim against Sirius; Sirius and Stream have subsequently
5 dismissed their claims against each other.  *Id.*

6    Plaintiff filed the Third Amended Complaint ("TAC") on April 23, 2010,
7 asserting claims for invasion of privacy (violations of California Penal Code section
8 630 *et. seq.*) and negligence.  In the TAC, Plaintiff sought statutory damages pursuant
9 to Penal Code section 637.2, injunctive relief pursuant to Penal Code 637.2(b), and
10 compensatory damages.  Gaines Decl. at ¶ 10.

11    Plaintiff engaged in extensive formal and informal discovery, including
12 multiple depositions in Los Angeles and Boston, multiple sets of interrogatories,
13 requests for admissions, and numerous document production requests.   Plaintiff's
14 counsel has reviewed thousands of documents produced in connection with the
15 litigation, engaged in extensive research and inquiry with respect to the claims
16 asserted in the Action, and have vigorously litigated the matter on behalf of the class,
17 first in contemplation of a class certification motion and, subsequently, in connection
18 with the settlement.  Gaines Decl. at ¶ 11.

19    The facts are clear.   Sirius hired Stream to handle some of its call center
20 operations; although Defendants recorded customers' calls in many cases, they failed
21 to notify customers that their telephone conversations were being recorded.   In fact,
22 within days of filing suit, Defendants promptly modified their practices and began
23 notifying all customers that their telephone calls were being recorded.   Gaines Decl.
24 at ¶ 12.

25    Plaintiff steadfastly maintained the viability and likely success of his claims on
26 a classwide basis, while Defendants proffered numerous defenses to both class
27 certification and liability.   Following extensive discovery and assessment of the risks
28 involved in further litigation, the Parties engaged in pre-certification settlement

discussions, which included a formal mediation session on May 12, 2010 with the Honorable Dickran Tevrizian, United Stated District Judge, Retired.  The mediation session did not result in a settlement.  Gaines Decl. at ¶ 14.

Following further settlement discussions, together with the continued participation and recommendations of Judge Tevrizian, on June 14, 2010 an agreement in principle was reached regarding the framework for basic settlement terms.  Following extended negotiations, the original Stipulation of Settlement, which provided for a 12 state settlement class, was entered into on October 25, 2010.  Gaines Decl. at ¶ 15.

The Parties moved the Court for preliminary approval of their settlement on November 29, 2010 (*see* Docket No. 50), which the Court tentatively denied but permitted the Parties to submit supplemental briefing in support of their contention that a 12-state settlement class could be properly certified under Rule 23 (Docket No. 54 and 55).  Following further briefing (Docket No. 56), the Court issued a tentative ruling, denying preliminary approval.  Gaines Decl. at ¶ 16.

After the tentative ruling was issued, the Parties further negotiated settlement terms to include a narrow five state class.  At the continued hearing on January 31, 2011, the Parties presented argument in support of this revised five state settlement class, comprised of residents from California, Nevada, Maryland, Florida, and New Hampshire.  The Court took the matter under submission and subsequently issued a ruling denying Plaintiff's motion as filed but instructing Plaintiff to submit a renewed motion for preliminary approval with revised settlement documents reflecting the proposed five state settlement class. (Docket No. 59).  *Id.*

Following further briefing, the Court granted preliminary approval to the Amended Stipulation of Settlement, which embodies a comprehensive resolution of all claims encompassed in Plaintiff's Fourth Amended Complaint for members of the five state settlement class.  *Id.*  The Court's preliminary approval order is attached to the Kenneth S. Gaines Declaration as Exhibit "B."

III.      **SUMMARY OF THE SETTLEMENT TERMS**

A copy of the Amended Settlement Agreement and Release is attached and marked Exhibit "A" to the Declaration of Kenneth S. Gaines submitted herewith.  Its significant terms are set forth below.

A.      **The Settlement Class**

The Settlement Class is defined as:

> All persons in California, Florida, Maryland, Nevada, and New Hampshire (the "Covered States") who (1) placed one or more telephone calls to Sirius Satellite Radio between July 13, 2006 and November 17, 2009, spoke with a representative on behalf of Sirius Satellite Radio, and were not provided with notice that the call may be recorded or monitored; and/or (2) received one or more telephone calls from Sirius Satellite Radio between July 13, 2006 and February 1, 2010, spoke with a representative on behalf of Sirius Satellite Radio, and were not provided with notice that the call may be recorded or monitored; and/or (3) placed one or more telephone calls to XM Satellite Radio between January 25, 2009 and November 17, 2009, to discuss music royalty fees or canceling their XM Satellite Radio subscription, spoke with a representative on behalf of XM Satellite Radio, and were not provided with notice that the call may be recorded or monitored.

Stip. at ¶ 1(f).  The scope of the Settlement Class and release reach back to July 13, 2006, the date on which the California Supreme Court decided *Kearney v. Solomon Smith Barney*, (2006) 39 Cal.4th 95 (resolving choice of law issues implicated by Cal. Penal Code section 630 *et. seq.*).

B.      **Settlement Consideration**

Stream (on its own behalf and on behalf of Sirius) will cause its insurer to pay a total of Nine Million Four Hundred Eighty Thousand Dollars ($9,480,000.00) to fund the Common Fund to be disbursed as follows:[3]

---

[3] In addition, without admitting liability, Defendants have agreed to comply with the notice and consent requirements of Cal. Penal Code §§ 630 *et seq.*, Fla. Stat. ch. 934.03 *et seq.*, Md. Code Ann., Cts. & Jud. Proc. § 10-402 *et seq.*, Nev. Rev. Stat. Ann. § 707.900 *et seq.*, and N.H. Rev. Stat. Ann. § 570-A:2-I *et seq.*, including providing notification to their customers that their telephone calls may be recorded or monitored.  Stip. at ¶ 4.

## 1.     Payment to Plaintiff and Class Members

The Settlement Amount, which is the Common Fund less all attorneys' fees and costs and costs of class notice and claims administration, is approximately Seven Million Dollars ($7,000,000.00), the entirety of which must be paid out by Defendants.  Stip. at ¶ 1(u).  After subtracting the Plaintiff's service payment,[4] the remainder will be distributed to Class Members who have submitted valid and timely claims, such that Class Members who reside in California shall be paid five times the amount to be paid to all other states, up to $5,000 each for California residents and up to $1,000 each for residents of each other state.  Stip. at ¶¶ 3.3-3.5.  If less than the entire Settlement Amount is claimed, or any settlement checks remain uncashed for more than 120 days, then such funds shall be paid to a *cy pres* recipient.  Stip. at ¶ 11.  The cost of settlement administration was estimated to be no more than $450,000, which shall be paid from the Common Fund.[5]

## 2.     Attorneys' Fees and Costs to Class Counsel

The Settlement provides that Plaintiff's counsel may request up to Two Million Dollars ($2,000,000) as an award of attorneys' fees, representing approximately 21% of the total settlement consideration and to be paid from the Common Fund.  Further, the Settlement provides that Plaintiff's counsel may request up to $20,000 in reimbursement of litigation costs actually and reasonably incurred during the course of this litigation.  Any portion of the attorneys' fees and costs not requested and/or not awarded shall be added to the Settlement Amount, for distribution to Class Members.  Stip. at ¶ 3.7.

//

[4] The Settlement provides that Plaintiff may request a service payment of up to $10,000, which is intended to compensate him for 1) his damages recoverable as a result of the claims alleged in the TAC, and 2) the time, expense, and risk he has expended in bringing this lawsuit for the benefit of Class Members.  Stip. at ¶ 3.6.

[5] As discussed in the accompanying motion, the notice expenses exceeded the parties' estimate.

### C.   The Release by Plaintiff and Class Members

The release, to which all Class Members (except for those who submit a valid and timely request for exclusion) will be bound, in essence releases Defendants from any and all claims related to the events that are the subject of this Action, in particular claims related to the recording and/or monitoring of telephone calls.  The release includes a waiver of Cal. Civil Code section 1542 (and any similar statute in the Class Members' state of residence) with respect to these released claims.  Stip. at ¶ 14.

### IV.   <u>THE COURT-APPROVED NOTICE PROGRAM</u>

The notice program approved by the Court in its March 14, 2011 preliminary approval order was administered flawlessly by GCG, Inc., the Court-appointed settlement administrator chosen by the parties and confirmed by the Court ("GCG").  A comprehensive explanation of the notice program and its success – including its compliance with the Settlement Agreement and the Court's order – is detailed in the Declaration of Jennifer M. Keough Regarding Notice Dissemination previously filed with the Court (Docket No. 70) ("Keough Notice Decl.").

According to GCG, of 1,765,594 potential Class Members (based on Sirius' customer records), approximately 50% ultimately received notice by e-mail after nearly 72% of transmitted e-mails were successfully delivered.[6]  Approximately 16% of Class Members successfully received notice by postcard through U.S. Mail.  Additional notices were mailed to potential Class Members who requested them from GCG or Class Counsel.  Keough Notice Decl. at ¶¶ 6-10.

In accordance with the Court-approved notice plan, notice was published in a quarter page advertisement in U.S.A. Today on April 26, 27, and 28, 2011 in editions circulated in California, Florida, Maryland, Nevada, and New Hampshire.  Keough Notice Decl. at ¶ 11.

GCG      maintained      a      website,      www.CallRecordingClassAction.com,

---

[6] Sirius had multiple e-mail addresses on file for many potential Class Members.

commencing on April 22, 2011 and running through the present.  It will remain on the internet until the settlement is fully concluded.  Tens of thousands of individuals have visited the site.  Keough Notice Decl. at ¶ 12.

Finally, GCG maintained an IVR (interactive voice response) system and utilized live operators and a live call-back system to handle class member inquiries. It has fielded over 2,500 calls.  Keough Notice Decl. at ¶ 13.  Moreover, Class Counsel have responded to a substantial number of Class Member inquiries, including fielding questions about the Settlement, the relevant laws, and who qualifies to participate.  Gaines Decl. at ¶ 20.

## V.    **ARGUMENT**

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation.  *See* 4 *Newberg* § 11.41 (and cases cited therein); *Churchill Village*, *supra,* 361 F.3d at 576 (noting "strong judicial policy" favoring settlements, provided they were reached through arms-length, non-collusive negotiations); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement); *Franklin v. Kaypro*, 884 F.2d 1222, 1227 (9th Cir. 1989) ("Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial…[t]he economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process."); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.")

//

//

## A.  The Class Members Received the Best Practicable Notice

To protect the rights of absent class members, the parties must provide class members with the best notice practicable of a potential class action settlement.  Fed. R. Civ. P 23(c)(2); *Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 811-12; *Eisen v. Carlisle & Jacquelin* (1974) 417 U.S. 156, 175 (individual notice must be sent to all class members who can be identified through reasonable efforts); *Mullane v. Central Hanover Bank & Garretson Company* (1950) 339 U.S. 306, 314 (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").  The content and method of the notice should be designed to apprise the class members of the terms of the proposed settlement and of the class members' rights regarding the settlement.  *See Mullane*, *supra*, 339 U.S. at 314; *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.* (E.D. Pa. 1970) 323 F. Supp. 364, 378.

The Court is vested with broad discretion in fashioning an appropriate notice program.  *See California Civil Code* § 1781; *Cartt v. Superior Court* (1975) 50 Cal.App.3d 960, 973-74.

The various forms of notice approved by the Court – by e-mail, postcard, and though the website – met these requirements: it identified the Parties and described the lawsuit, the Class, the settlement amount, the proposed method for distribution of the settlement consideration, the amount proposed to be paid as a service payment to the named Plaintiff, and the requested amount for attorneys' fees and costs.  *See* Keough Notice Decl., Exs. A, B, C, and E.  The Notice described the proposed Settlement with enough specificity to allow each Class Member to make an informed choice whether to accept and participate in it.  It also explained how and when Class Members may object to or opt out of the Settlement.  Finally, the Notice provided the schedule for the hearing on final approval of the Settlement and informed Class Members how to obtain additional information about the Settlement.

The California Supreme Court has held that notice is appropriate if it has a "reasonable chance of reaching a substantial percentage of the class members.…" *Cartt*, *supra*, 50 Cal.App.3d at 974.  Here, notice was mailed or e-mailed to each individual Class Member at that Class Member's last known e-mail or physical address.  In the end, a substantial percentage of potential Class Members received individual notice.  The publication notice effectively provided notice to many more potential Class Members.  *See* Keough Notice Decl. at ¶ 11.  As Notice actually reached the vast majority of potential Class Members and apprised them of all pertinent information regarding the Settlement, under applicable law, the Notice given to Class Members was more than adequate.

### B.     Final Settlement Approval is Warranted

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *See* 4 *Newberg on Class Actions* 4th (4th ed. 2002) § 11.41 (and cases cited therein); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst, supra,* 529 F.2d at 950.  These concerns apply with particular force in a case such as this, where novel issues of law in untested, rarely litigated areas, are implicated.

Pursuant to Federal Rule of Civil Procedure 23(e), the Court must approve any proposed class action settlement.  Court approval of class action settlements requires the following steps:

(1)     Preliminary approval of the proposed settlement at a preliminary hearing;

(2)     Dissemination of mailed and/or published notice of the Settlement to all affected Class Members; and

(3)     A "formal fairness hearing," or final settlement approval hearing, at which Class Members may be heard regarding the Settlement, and at

NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

which evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented.

*See Manual for Complex Litigation, Fourth* (4th ed. 2004) § 21.632-34.

The first two steps of this process are now complete. The first step was completed on March 14, 2011, when this Court entered an order granting preliminary approval of the Settlement. As detailed in the Keough Notice and Claims Declarations, the Notice program was engaged in accordance with the Court's preliminary approval order and conformed with accepted standards in notice administration. This is, perhaps, best evidenced by the strong rate of response to the Settlement by Class Members. Keough Claims Decl. at ¶ 23.

The last step in the class action settlement approval process is the final approval hearing, at which the Court shall finally conclude whether the Settlement is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). At the final approval hearing Class Members will have the opportunity to be heard regarding the Settlement, and Class Counsel will present evidence and argument in support of the Settlement. At the conclusion of the final approval hearing the Court will decide whether to grant final approval of the Settlement and whether to enter a final order and judgment thereon.

## 1.    Each of the Relevant Criteria Supports Final Approval

In the Ninth Circuit, a court must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable:

(1) the strength of the plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed and the stage of the proceedings;

(6) the experience and views of counsel;

- 11 -

1    (7) the presence of a governmental participant; and

2    (8) the reaction of the class members to the proposed settlement.

3    *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *accord Linney*

4    *v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Hanlon, supra*, 150

5    F.3d at 1026.  "In addition, the settlement may not be the product of collusion among

6    the negotiating parties."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th

7    Cir. 2000).  These factors are not exclusive, and one factor may deserve more weight

8    than the others depending on the circumstances.  *Torrisi, supra*, 8 F.3d at 1376.  In

9    some instances, "one factor alone may prove determinative in finding sufficient

10   grounds for court approval."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221

11   F.R.D. 523, 525-26 (*citing Torrisi, supra*, 8 F.3d at 1376).

12   "The involvement of experienced class action counsel and the fact that the

13   settlement agreement was reached in arm's length negotiations, after relevant

14   discovery had taken place create a presumption that the agreement is fair."  *Linney v.*

15   *Cellular Alaska P'ship*, Nos. C-96-3008 DLJ, C-97-0203 DLJ, C-97-0425 DLJ, C-

16   97-0457 DLJ, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d at

17   1234.

18
19
        a.    **The Strength of Plaintiff's Case Turns on an**
              **Untested Area of Law Creating Significant Risks**
              **to Plaintiff and Class Members**

20   There is little published case law relating to the application of *Penal Code* §

21   632 in the class action context, including whether this claim is properly maintainable

22   in class action form.  The annihilating damage defense to certification, which still

23   could apply here, is a substantial risk inherent in continued litigation through an

24   opposed certification motion.  Several courts in the Central District of California have

25   denied class certification of cases when the potential damage exposure following

26   certification could potentially be so large that it would be "annihilating" to the

27   Defendant.  *See Najarian v. Avis Rent a Car Sys.*, No. CV 07-0588, 2007 U.S. Dist.

28

- 12 -

LEXIS 59932 (C.D. Cal. June 13, 2007); *Najarian v. Charlotte Rousse, Inc.*, No. CV 07-0501, 2007 U.S. Dist. LEXIS 59879 (C.D. Cal. June 12, 2007); *Soualian v. Int'l Coffee & Tea LLC*, No. CV 07-0502, 2007 US. Dist. LEXIS 44208 (C.D. Cal June 11, 2007); *Spikings v. Cost Plus Inc.*, No. CV 06-8125, 2007 U.S. Dist. LEXIS 44214 (C.D. Cal. May 25, 2007); *Legge v. Nextel Commc'ns, Inc.* No. CV 02-8676, 2004 U.S. Dist. LEXIS 30333 (C.D. Cal. June 25, 2004). *Cf. Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) (leaving open the possibility that the annihilating damages doctrine could bar certification). *See* Gaines Decl. at ¶ 26.

Defendants also opposed certification on other grounds, including the difficulty of ascertaining the identity of class members without listening to each and every telephone call. Gaines Decl. at ¶ 28.

Moreover, during the pendency of this lawsuit, Defendants proffered numerous arguments in favor of their position that they face no liability – or, at most, minimal potential liability – including a proffered business use exception in section 632. *Id.*

Plaintiff maintains that he would succeed at trial on a classwide basis. Defendants, on the other hand, contend otherwise. Simply, there is uncertainty which supports that the Settlement as a fair and appropriate compromise. Gaines Decl. at ¶¶ 24-31.

### b.     The Complexity, Expense and Likely Duration of Continued Litigation Weighs in Favor of Final Approval

In determining whether a settlement warrants final approval, Courts consider the complexity, expense, and likely duration of the litigation in the absence of settlement. *See Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). In applying this factor, a court should weigh the benefits of the settlement against the expense and delay involved in

achieving an equivalent or more favorable result at trial.  *See Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).

Consumer class action cases are expensive and time-consuming to litigate. This case presents a more difficult situation than most, given the lack of legal authority surrounding the interpretation of the Penal Code sections at issue in the factual context of this case.  The presence of two potentially-liable defendants – and two well-respected law firms representing them – would increase the potential complexity, expense, and duration of continued litigation if a settlement were not reached.  Gaines Decl. at ¶¶ 34-36.

The Settlement also avoids the need for a contested class certification motion that would be time consuming and costly for all parties.  In addition, if the Court were to deny such a motion for class certification, Class Members would be left without a group remedy, and the issues presented here – relatively small individual claims from the onset – would need to be litigated individually in a piecemeal, costly, and time-consuming fashion.  The Settlement also avoids a lengthy trial or trials that likely would have involved testimony by numerous witnesses and experts. Gaines Decl. at ¶¶ 34-37.

Extensive, complex litigation will also result in substantial financial risk to Class Members.  Class actions are expensive to prosecute and costs – many of which are not recoverable in the event Plaintiff was to prevail at trial – can increase exponentially as litigation progresses.  Efficient settlement here at a relatively early stage of litigation means a larger portion of the Settlement funds are paid out to Class Members.  Gaines Decl. at ¶¶ 35-36.

Even if Plaintiff prevailed on his class claims at trial, he faced the risk that the Court would reduce any potential damage award through its equitable powers.  *See Kearney, supra,* 39 Cal.4th 95 (wherein the Supreme Court applied its equitable powers to reduce substantial statutory damages to zero).  Gaines Decl. at ¶¶ 29-30.

### c.   The Risk of Maintaining Class Action Status Through Trial

If Plaintiff were to succeed on his class certification motion, the risk is always present that a class could later be decertified based on new law or facts which arise during the litigation.  Settlement at this juncture avoids this risk.  Gaines Decl. at ¶ 37.

### d.   The Value of the Settlement Favors Final Approval

Ultimately, a settlement should stand or fall on the adequacy of its terms.  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981).   This matter presents a unique factual pattern and the Settlement reflects an excellent compromise.  The basis of Class Members' claims are statutes which prohibit the recording of telephone conversations without the consent of all parties to the conversation.  Gaines Decl. at ¶¶ 8, 10.  The California Penal Code provides for fixed statutory damages of $5,000 per occurrence (*California Penal Code* § 637.2).  The laws of Nevada, Florida, Maryland, and New Hampshire each provide for minimum statutory damages of $1,000 (or $100 a day for each day of violation, whichever is higher), punitive damages, and the recovery of attorneys' fees and costs.[7]

Based upon the discovery completed thus far and the nature of the claims alleged, neither Plaintiff Batmanghelich, nor any other Class Member, has suffered actual damages.  In fact, it is suspected that few – if any – Class Members even realize they have been subject to the harm alleged on their behalf.  Based on this analysis, whatever Class Members receive will be nothing short of a windfall in exchange for the release of claims which they likely do not know they have.  Gaines Decl. at ¶ 24, 33.

---

[7] *See* Fla. Stat. Ann. § 934.03(1) et seq. (Florida); Md Cts. & Jud. Proc. Code Ann. § 10-402(a) et seq. (Maryland); Nev. Rev. Stat. § 200.620 et seq. (Nevada); NH Rev. Stat. Ann. § 570-A:2 et seq. (New Hampshire).

However, the purpose of the relevant laws – to discourage the surreptitious recording of telephone calls – will be advanced by this Settlement.  The Defendants have not only changed their business practices by agreeing not to record telephone calls in the future without providing notice of recording (Stip. at ¶ 4), but they are paying a Common Fund of $9,480,000 to compensate Class Members.  Stip. at ¶ 1(l); Gaines Decl. at ¶ 25.

Considering the risk that the Class would not be certified and that Plaintiff would not succeed at trial (or that a substantial judgment in the class' favor would be reduced after trial), the present settlement represents an excellent compromise of Plaintiff's claims.  Gaines Decl. at ¶¶ 6, 24-33; *see* Motion for Preliminary Approval of Class Action Settlement (Docket No. 50), pp. 12-15.  Class Counsel firmly believes that the proposed resolution of these claims is in the best interest of the Settlement Class.  *Id.*

Accordingly, the value of the Settlement – in both monetary and non-monetary terms – justifies final approval of the Settlement.

### e.    Disclosure of Documents and Data Demonstrating the Strengths and Weaknesses of this Action was Completed Prior to Entering into the Settlement

The extent of discovery that has been completed and the stage of the litigation are factors that courts consider in determining the fairness of a settlement.  *See Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794, 1801 (1996); *see also Clark v. American Residential Services, LLC*, 175 Cal.App.4th 785 (2009).  This Settlement was entered into just prior to the filing of a class certification motion which would effectively be dispositive of the class claims.  The Parties exchanged substantial discovery in anticipation of this motion – including multiple depositions, interrogatories and requests for admission, and thousands of documents.  The Parties exchanged further informal data in connection with their mediation and subsequent negotiations.  The Parties also apprised each other of their respective factual

contentions, legal theories, and defenses.   The Parties negotiated the proposed Settlement with ample knowledge of the strengths and weaknesses of their case. Gaines Decl. at ¶¶ 11-15.

The Parties engaged in extensive good-faith, arms-length negotiations, including a mediation session conducted before an experienced mediator and subsequent extended settlement discussions that stretched over five months.  *Id*.  The fact that this Settlement was negotiated at arms-length is inescapable.

### f.      The Experience and Views of Counsel Favor Final Approval

The endorsement of qualified and well-informed counsel of the settlement as fair is entitled to significant weight.  *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).  Class Counsel have over seven decades of collective litigation experience, much of which has been devoted to consumer and employment cases in the class action context.  *See* Gaines Decl. at ¶¶ 2-5, 21, 34; Declaration of Scott A. Miller at ¶¶ 2-4; Declaration of Daniel F. Gaines at ¶¶ 2-5; Declaration of Steven L. Miller at ¶¶ 2-4.

Class Counsel support the Settlement as fair, adequate, reasonable, and in the best interests of the Settlement Class as a whole.   Class Counsel believe this Settlement to be an excellent result for Settlement Class Members.  *See* Gaines Decl. at ¶ 6.

### g.      The Presence of a Governmental Participant

There is no governmental participant here; this factor does not apply.

### h.      Class Members' Positive Reaction to the Settlement Favors Final Approval

Finally, and perhaps most importantly, courts examine the reaction of Class Members to determine if a settlement that directly affects their interests should be approved as fair, adequate, and reasonable.  Through July 19, 2011, 8,006 Class Members from California and 7,151 Class Members from Florida, Maryland,

1   Nevada and New Hampshire combined have filed claims.  *See* Gaines Decl. at ¶ 23;

2   Keough Claims Decl. at ¶ 2.  Only 32 Class Members have requested exclusion from

3   the Settlement.  *Id.* at 3.  Not one Class Member has yet objected to any of the

4   Settlement terms.  *Id.* at 4.

5          The Court should construe the overwhelming non-opposition to and

6   participation in the Settlement as strong indicators of Class Members' support for the

7   Settlement as fair, adequate, and reasonable.

8          **C.     Final Class Certification is Appropriate**

9          Before a court evaluates a settlement under Federal Rule of Civil Procedure

10  23(e), it must determine that the settlement class satisfies the requirements

11  enumerated under Rule 23(a) and at least one of the requirements in Rule 23(b). *Wal-*

12  *Mart Stores, Inc. v. Dukes*, __ S. Ct. __, 2011 WL 2437013 at *5 (June 20, 2011).

13  The proposed Settlement Class meets all of the requirements of certification for

14  settlement purposes.

15          **1.     FRCP 23(a) Requirements For Class Certification Are Met**

16          Rule 23(a) provides the factors that the Court looks to for class certification:

17  (1) the class is so numerous that joinder of all members is impracticable; (2) there are

18  questions of law or fact common to the class; (3) the claims or defenses of the

19  representative parties are typical of the claims or defenses of the class; and (4) the

20  representative parties will fairly and adequately protect the interests of the class.  Fed.

21  R. Civ. P. 23.  These elements are satisfied here.

22          **a.  Numerosity**

23          If the class is sufficiently large that joinder of all members is impractical or that

24  individual joinder is impractical, the numerosity requirement is met.  *See Cox v.*

25  *American Cast Iron Pipe*, 784 F.2d 1546, 1557 (11th Cir. 1986).  It is estimated that

26  the class potentially contains upwards of one million members.  Joinder of individual

27  claims is impractical here and the numerosity requirement is satisfied.  Gaines Decl.

28  at ¶ 40.

### b. Commonality

The commonality requirement of Rule 23(a) is met if there are common questions of fact and law among the class. *Hanlon*, *supra*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class")*; see also Dunk*, *supra*, 48 Cal.App.4th at 1806-1807 (upholding the propriety of a nationwide settlement class with one class representative, despite objector's assertions that "different laws in various states defeat the commonality of law requirement.").

*Hanlon*, *supra,* 150 F.3d at 1019, explains that to demonstrate commonality, not all questions of fact and law need be the same. The existence of shared legal issues, even with divergent factual predicates or a common core of salient facts coupled with disparate legal remedies, will satisfy the commonality requirement. *Id*. Thus, although members of the proposed class may possess different avenues of redress, if their claims stem from the same source, then the commonality factor is satisfied.

Here, all the class members' claims stem from identical conduct. Liability under the laws of California, Florida, Nevada, Maryland, and New Hampshire is triggered based on this identical conduct. The only difference is the amount and type of damages recoverable for the violation. This does not defeat commonality.

Under the terms of the proposed settlement, California class members are entitled to an amount up to $5,000 each, while Class members residing in other states are entitled to up to $1,000 each. This allocation reflects the minimum statutory damages recoverable under the statutes of each of the five states. "Such differences in settlement value do not, without more, demonstrate conflicting or antagonistic interests within the class." *In re Pet Food Products Liability Litig.*, 629 F.3d 333, 346 (3d Cir. 2010). In fact, "varied relief among class with differing claims in class settlements is not unusual." *Id.*; *see also Petrovic v. Amoco Oil Corp.*, 200 F.3d

1140, 1146 (8th Cir. 1999) ("[A]lmost every settlement will involve different awards for various class members."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2004) ("We agree with the District Court that the fact that there may be variations in the rights and remedies available to injured class members under the various laws of the fifty states in this matter does not defeat commonality and predominance."). *Cf. Hanlon*, *supra*, 150 F.3d at 1023-24 ("the idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims").

Under these circumstances, the commonality requirement is satisfied for settlement purposes. *Hanlon*, *supra*, 150 F.3d at 1019-20; *see also Cox*, *supra*, 784 F.2d at 1557. Gaines Decl. at ¶ 41

### c. Typicality

Typicality is met if the Named Plaintiff's claims are typical of the class, though "they need not be substantially identical." *Hanlon*, *supra*, 150 F.3d at 1020. In *Gen. Tel. Co. of the SW v. Falcon*, 457 U.S. 147, 158 n. 13 (1982), the U.S. Supreme Court said:

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy of representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

The Court in *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) opined:

> The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class....Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought....The test of typicality is whether other members have the

1
2
3

same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct (citations and internal quotations omitted).

4
5
6
7
8
9

The claims for class members in Florida, Maryland, Nevada, and New Hampshire are sufficiently co-extensive, as are the potential defenses to those claims, such that Plaintiff's California claims are typical of the class.  While there are nuances in the various laws that are always subject to interpretation by the courts in those jurisdictions, the general structure of claims and defenses in each state is sufficiently similar to each other state; the laws are generally homogenous.

10
11
12
13

Plaintiff's renewed motion for preliminary approval of the class action settlement (Docket No. 60) contains a comprehensive analysis of the similarities among each of the five states' relevant privacy laws with respect to typicality; Plaintiff incorporates the argument at pp. 12-17 of his renewed motion herein.

14
15
16
17
18

Based on the substantial similarities of these statutes, in terms of (1) the conduct prohibited, (2) possible business exceptions, and (3) the availability of a private cause of action and statutory damages, and the typical fact pattern which underlies the claims of all Class Members, Plaintiff satisfies the typicality requirement for settlement purposes here.  Gaines Decl. at ¶ 42

### d.  Adequacy of Representation

19
20
21
22
23
24
25

Rule 23(a)(4) requires that the Named Plaintiff and Class Counsel fairly and adequately represent and protect the interests of the class.  If the Named Plaintiff and Class Counsel have no interests adverse to the interest of the proposed class members and are committed to vigorously prosecuting the case on behalf of the class, then the adequacy requirement is met.  *Hanlon*, *supra*, 150 F.3d at 1020; *see also Griffin v. Carlin*, 755 F.2d 1516 (11th Cir. 1985).

26
27
28

Over the course of nearly two years, the Named Plaintiff Kambiz Batmanghelich and Class Counsel have expended countless hours in furtherance of

the Settlement Class' interests.  Both Mr. Batmanghelich and Class Counsel have satisfied their fiduciary obligations to the Class in aggressively litigating this case, then effectively negotiating a very fair compromise of the claims alleged.  Gaines Decl. at ¶¶ 42-43.

As addressed at the preliminary approval stage, Mr. Batmanghelich has no conflict of interest with non-California Class Members with respect to the settlement's payment allocation; it is reasonably based on the minimum potential recoveries available to class members from each of the five included states.  *Id.*

In the Ninth Circuit, assessment of the adequacy of a plan of allocation in a class action is governed by the same standards of review applicable to the settlement as a whole - the plan must be fair, reasonable and adequate.  *In re Omnivision Technologies, Inc.*, *supra*, 559 F.Supp.2d at 1045; *Class Plaintiffs*, *supra,* 955 F.2d at 1284.  A plan of allocation that allocates "settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits" is reasonable. *Ominivision*, *supra*, 559 F.Supp.2d at 1045.  "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *In re Worldcom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

Here, the Settlement's allocation of damages for Class Members from California at five times that of Class Members from Florida, Maryland, Nevada and New Hampshire is based on a reasoned and rational basis.  The relevant California statute provides California residents with fixed statutory damages of $5,000 while the statutes of Florida, Maryland, Nevada and New Hampshire provide for minimum statutory damages of $1,000.  The settlement payments are proportional to these minimum statutory damage awards.  Class members have not suffered actual damages here, and most class members do not know, and without notice may never know, that their telephone calls were recorded.

1   Moreover, Florida, Maryland, Nevada and New Hampshire each provide for

2   identical levels of damages for violation of their respective recording statutes – the

3   allocation of equal payments to Class Members from each of these states is fair and

4   reasonable.

5   Mr. Batmanghelich is requesting a small service payment – $10,000, for his

6   significant time and efforts assisting Class Counsel with factual issues surrounding

7   the case, and in exchange for his own share of the Settlement Amount.  This award

8   represents about one-tenth of one percent of the Common Fund, and therefore does

9   not constitute a sufficient conflict of interest to foreclose fulfilling the adequacy

10  requirement.  *See* Stip. at ¶ 3.6; Gaines Decl. at ¶ 47.

11  Finally, Class Counsel, with more than seven decades of collective litigation

12  experience, are competent and qualified to represent the Class.  *See* Gaines Decl. at

13  ¶¶ 2-5; Declaration of Scott A. Miller at ¶¶ 2-4; Declaration of Daniel F. Gaines at ¶¶

14  2-5; Declaration of Steven L. Miller at ¶¶ 2-4.

### 2.      FRCP 23(b)(3) Requirements for Class Certification are Met

15  The Settlement Class also meets the requirements of Rule 23(b)(3) for

16  settlement purposes because: 1) common questions predominate over questions that

17  affect individual members; and 2) class resolution is superior to other available

18  methods of adjudication.  When assessing predominance and superiority, the Court

19  may consider that the class will be certified for settlement purposes only.  *Amchem*

20  *Prods., Inc. v. Windsor*, 521 U.S. 591, 618-20 (1997).  A showing of manageability at

21  trial is unnecessary; the dispositive inquiry at this stage is "whether the proposed

22  classes are sufficiently cohesive to warrant adjudication by representation."  *Id.* at

23  618-20, 623; *see also Hanlon*, *supra*, 150 F.3d at 1022.

### a.      Predominance

24  In analyzing predominance, as with commonality, "[i]t is not necessary that all

25  questions of fact or law be common, but only that some questions are common and

26  that they predominate over individual questions." *Cox*, *supra*, 784 F.2d at 1557.  The

- 23 -

1   claims of the Settlement Class are sufficiently cohesive; all Settlement Class

2   Members share a common nucleus of facts and potential legal remedies.  As a result,

3   common questions of law and fact predominate.  Gaines Decl. at ¶ 45.

### b.   Superiority

5   Particularly in the settlement context, class resolution is superior to other

6   available methods for the fair and efficient adjudication of the controversy.  *See*

7   *Hanlon*, *supra*, 150 F.3d at 1023.   The superiority requirement involves a

8   "comparative evaluation of alternative mechanisms of dispute resolution."  *Id.*   Here,

9   as in *Hanlon*, the alternative method of resolution is individual claims for relatively

10  small amounts of damages, proving uneconomical for potential plaintiffs because the

11  cost of litigation dwarfs potential recovery.  *Id*.

12  Perhaps the most persuasive argument in favor of the superiority of class

13  treatment here is the surreptitiousness of the alleged violations by Defendants; were a

14  class not certified, many (if not all) Class Members would not bring claims for the

15  violations alleged, because few (if any) know their calls were recorded: Defendants'

16  alleged unlawful conduct, by its very nature, is secret in nature.  As a result, class

17  treatment is a superior method for adjudicating these claims, and a class action is the

18  preferred method of resolution.  Gaines Decl. at ¶ 46.

### D.   Defendants Have Provided Notice to the Attorney Generals Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715

21  Because this case is before this Court under the Class Action Fairness Act, 28

22  U.S.C. § 1332(d), Defendants are required to notify "appropriate Federal and State

23  officials" of the Settlement.  28 U.S.C. § 1715.

24  Defendants notified the required officials on February 18, 2011.  *See* Docket

25  No. 68.

26  28 U.S.C. § 1715(d) provides that "[a]n order giving final approval of a

27  proposed settlement may not be issued earlier than 90 days after the later of the dates

28  on which the appropriate Federal official and the appropriate State official are served

1   with the notice….” 28 U.S.C. § 1715(d).

2       More than 90 days have passed since notice was provided and the Parties have

3   received no objections (or any other response) from any State or Federal officials.

4   Gaines Decl. at ¶ 68.  As such, the Settlement may be finally approved by the Court.

5   **VI.   <u>CONCLUSION</u>**

6       For all the foregoing reasons, Plaintiff requests that the Court grant final

7   approval of the Settlement and approve distribution of the Settlement funds as set

8   forth in the Stipulation.

9

10  DATED:  July 22, 2011                Respectfully submitted,

11                                       GAINES & GAINES,
                                         A Professional Law Corporation

12

13                                       By:   /s/  Kenneth S. Gaines
                                                                        
14                                             KENNETH S. GAINES
                                               DANIEL F. GAINES
15                                                 Attorneys for Plaintiff Kambiz
16                                                 Batmanghelich and Class Counsel

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT