1  KENNETH S. GAINES, ESQ. SBN 049045
   ken@gaineslawfirm.com
2  DANIEL F. GAINES, ESQ. SBN 251488
   daniel@gaineslawfirm.com
3  **GAINES & GAINES, APLC**
   21550 Oxnard Street, Suite 980
4  Woodland Hills, CA 91367
   Telephone: (818) 703-8985
5  Facsimile:  (818) 703-8984

6  SCOTT A. MILLER, ESQ.  SBN 230322
   scott.miller@smillerlawoffices.com
7  **LAW OFFICES OF SCOTT A. MILLER, APC**
   16133 Ventura Blvd., Ste. 645
8  Encino, CA 91436
   Telephone: (818) 788-8081
9  Facsimile:  (818) 788-8080

10 STEVEN L. MILLER, ESQ. SBN 106023
   stevenlmiller@sbcglobal.net
11 **STEVEN L. MILLER, APLC**
   16133 Ventura Blvd., Ste. 645
12 Encino, CA 91436
   Telephone: (818) 986-8900
13 Facsimile:  (818) 990-7900

14 Attorneys for Plaintiff Kambiz Batmanghelich
   and Class Counsel

15

16          **UNITED STATES DISTRICT COURT**

17          **CENTRAL DISTRICT OF CALIFORNIA**

18              **WESTERN DIVISION**

19 | KAMBIZ BATMANGHELICH, on | **CASE NO.: CV 09-9190 VBF (JCx)** |
   behalf of himself and all others
20 similarly situated, and on behalf of the | **PLAINTIFF'S RESPONSE TO**
   general public, | **OBJECTIONS TO CLASS ACTION**
21 | **SETTLEMENT**
22          Plaintiffs,
                                  **DATE:** September 12, 2011
23      v.                        **TIME:** 1:30 P.M.
                                  **COURTROOM:** 9
24 SIRIUS XM RADIO, INC., a        **JUDGE:** Hon. Valerie Baker Fairbank
   Delaware corporation, STREAM
25 INTERNATIONAL INC., a Delaware
   corporation, and DOES 3 through 50,
26 inclusive,

27          Defendants.

28

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     THE CLASS OVERWHELMINGLY SUPPORTS THE SETTLEMENT.2

III.    THE PROFESSIONAL OBJECTORS: DARRELL PALMER AND
        JOHN DAVIS.........................................................................................3

IV.     ARGUMENT...........................................................................................5

    A.      The Objectors Have Not Submitted Evidence of Class Membership.....5

    B.      The Requested Attorneys' Fees are Reasonable ...................................6

        1. Bandas Objection .......................................................................6

        2. Melton Objection........................................................................6

        3. Denny Objection ........................................................................8

    C.      Claim Forms Are Necessary to Implement the Settlement and Require
        Only Information Necessary to Process Claims.....................................8

    D.      The Notice Was Clear and Complied With Federal Law ....................10

    E.      Mr. Batmanghelich's Proposed Incentive Payment is Reasonable.......12

    F.      The Class Definition is Proper ............................................................14

    G.      The Settlement Amount is Fair and Adequate and its Apportionment
        Among Class Members is Fair.............................................................16

    H.      The Release is not Overly Broad..........................................................18

    I.      The Parties Have Made Substantial Efforts to Accept Potentially
        Defective Claim Forms ........................................................................19

    J.      Melton's Request for an Incentive Fee Should be Denied...................19

V.      IN THE EVENT THAT OBJECTIONS ARE OVERRULED, THE
        COURT SHOULD REQUIRE THAT THE OBJECTORS POST A
        BOND IN ORDER TO APPEAL ..........................................................20

VI.     CONCLUSION .....................................................................................20

1

# TABLE OF AUTHORITIES

2

3

## Federal Statutes

4

26 U.S.C. § 6041(a) .................................................................................9

5

Fed. R. Civ. P. 23(c)(2)(B) .........................................................10, 11, 12

6

7

Fed. R. Civ. P. 23(c)(3)...........................................................................11

8

## Federal Cases

9

*Boyd v. Bechtel Corp.*,

10

    485 F.Supp. 610 (N.D. Cal. 1979)..................................................2

11

*Churchill Village, L.L.C. v. General Electric*,

12

    361 F.3d 566 (9th Cir. 2004) .........................................................2

13

*Cook v. Niedert*,

14

    142 F.3d 1004 (7th Cir. 1998) .....................................................13

15

*Devlin v. Scardaletti*,

16

    536 U.S. 1 (2001)...........................................................................4

17

*Francisco v. Numismatic Guaranty Corp. of Am.*,

18

    2008 WL 649124 (S.D. Fla. 2008) ...............................................2

19

*Hanlon v. Chrysler Corp.*,

20

    150 F.3d 1011 (9th Cir. 1998) .............................................passim

21

*Hensley v. Eckerhart*,

22

    461 U.S. 424 (1983)......................................................................7

23

*In re Austrian & German Bank Holocaust Litig.*,

24

    80 F.Supp.2d 164 (S.D.N.Y. 2000) ..............................................2

25

*In re Lorazepam & Clorasepate Antitrust Litig.*,

26

    205 F.R.D. 369 (D.D.C. 2002) .....................................................6

27

*In re M.D.C. Holdings Sec. Litig.*,

28

    1990 WL 454747 (S.D. Cal. Aug. 30, 1990)................................7

*In re Nissan Motor Corp. Antitrust Litigation*,
  552 F.2d 1088 (5th Cir. 1977) ................................................................12

*In re Pac. Enter. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ....................................................................7

*In re Pet Food Products Liability Litig.*,
  629 F.3d 333 (3d. Cir. 2010) .............................................................17, 18

*In re UnitedHealth Group PSLRA Litig.*,
  643 F.Supp.2d 1107 (D. Minn. 2009) ....................................................4

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ...................................................................17

*In re Xcel Energy, Inc.*,
  364 F.Supp.2d 980 (D. Minn. 2005) ........................................................7

*Krzesniak v. Cendent Corp.*,
  2007 WL 4468678 (N.D. Cal. Dec. 17, 2007) .......................................12

*Petrovic v. Amoco Oil Corp.*,
  200 F.3d 1140 (8th Cir. 1999) ...............................................................17

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..........................................................passim

*Sandoval v. Tharaldson Employee Management, Inc.*,
  2010 WL 2486346 (C.D. Cal. Jun. 15, 2010).........................................19

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ...................................................................11

*Van Vranken v. Atlantic Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995).........................................................13

*Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ...................................................................7

*Wells Fargo Loan Processor Over-Time Pay Litigation,*
    2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ....................................................20

### California Cases

*Clark v. American Residential Services LLC,*
    175 Cal.App.4th 785 (2009) .............................................................13, 14

*Rebney v. Wells Fargo Bank,*
    220 Cal.App.3d 1117 (1990) ...................................................................5

### Treatises and Other Authorities

2 *Newberg on Class Actions* § 6:14 (4th ed.) .............................................15

3 *Newberg on Class Actions* § 8:39 (4th ed.) .............................................11

5 *Newberg on Class Actions* § 15:37 (4th ed.) .............................................4

*Manual for Complex Litigation* § 30:14 .....................................................15

1 *McLaughlin on Class Actions* § 4:2 (7th ed.) ...........................................15

1 *McLaughlin on Class Actions* § 4:19 (7th ed.) .........................................18

2 *McLaughlin on Class Actions* § 6:9 (7th ed.) ...........................................2

2 *McLaughlin on Class Actions* § 6:16 (7th ed.) .........................................11

2 *McLaughlin on Class Actions* § 6:22 (7th ed.) .........................................19

Geoffrey P. Miller & Lori S. Singer, *Nonpecuniary Class Action Settlements,*
    60 Law & Contemp. Probs. (Autumn 1997) ...........................................4

Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center,
    *Managing Class Action Litigation: A Pocket Guide for Judges* (2005) ...........3

## I.  INTRODUCTION

Plaintiff submits this response to objections filed by three class members out of the more than 1.7 million who received individual notice (representing fewer than .00017%).  There were just 32 opt-outs.  The paucity of objections and opt-out requests to the settlement is notable.

The substantial relief obtained for class members is even more significant – based on claims received through August 19, 2011, approximately 8,411 California class members shall be paid about $700 each and approximately 7,467 class members from Florida, Maryland, Nevada and New Hampshire shall be paid about $140 each.[1] All future callers to Defendants will benefit from Defendants' agreement to disclose that calls to them may be recorded or monitored.  Settlement Agreement ¶ 4.

Two of the three objectors – Michelle Melton and Dave Denny – are represented by "professional" objectors' counsel who have filed "canned" objections to the settlement; these objections closely resemble the objections their attorneys, Darrell Palmer and John Davis, have filed in connection with many other class action settlements.

Most importantly, as discussed herein, all three of the objections lack merit and should be overruled.  Each of the objectors have misread (or failed to read) the settlement agreement, which quickly disposes of several of their arguments.  Their other arguments, particularly those addressing attorneys' fees and the named plaintiff's proposed service payment, duplicate the discussion by Plaintiff in his motion for final approval and fee application and, as a result, add no value or assistance to the Court's determination.

The absence of any significant objections to the settlement supports final approval, and the nature of the objections themselves underscores the propriety of the

---

[1] The claim filing deadline is September 10, 2011.  Plaintiff will advise the Court of the tentative total claims and estimated payouts at the final approval hearing.

PLAINTIFF'S RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT

Court's initial determination to preliminarily approve the settlement. Plaintiff's motion for final approval and Plaintiff's application for attorneys' fees and costs and a modest service payment should be granted.

## II. THE CLASS OVERWHELMINGLY SUPPORTS THE SETTLEMENT

In deciding whether to approve the proposed settlement, the ultimate question for the Court is whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

A certain number of objections are to be expected in response to the settlement of any class action. *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 175 (S.D.N.Y. 2000). A small number of objectors, however, is a strong indicator that a settlement is indeed fair and adequate. *Id.*; *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ("The court had discretion to find a favorable reaction to the settlement among class members given that, of 376,301 putative class members to whom notice of the settlement had been sent, 52,000 submitted claims forms and only fifty-four submitted objections."); *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004) (noting favorably "that only 45 of the approximately 90,000 notified class members objected to the settlement"); *Francisco v. Numismatic Guaranty Corp. of Am.*, 2008 WL 649124, *12 (S.D. Fla. 2008) ("A low percentage of objections will confirm the reasonableness of a settlement and support its approval."); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 624 (N.D. Cal. 1979) (objections from 16% of the class constituted a "persuasive" showing that settlement was adequate). *See generally* 2 *McLaughlin on Class Actions* § 6:9 (7th ed.).

Here, class member response has been uniformly positive. Only 32 class members have requested exclusion and only three have submitted objections. Over

15,800 have submitted claims and the settlement payments are substantial – especially considering that the class members suffered no actual harm or out-of-pocket loss. Such a positive response underscores that the settlement reached in this case is a good one – it provides just compensation to class members and has forced the Defendants to amend their practices, protecting consumer privacy rights going forward.

## III.  THE PROFESSIONAL OBJECTORS: DARRELL PALMER AND JOHN DAVIS

Three class members have submitted objections: Edmund Bandas[2] (in pro per), Michelle Melton (represented by professional objector Darren Palmer) and Dave Denny (represented by professional objector John Davis).

Legitimate objectors exercising their rights to object to a settlement play a valuable role in ensuring that settlements are fair and adequate, particularly in complex cases with complex settlements. However, a growing number of unscrupulous attorneys make a living exploiting the right to object to class action settlements by filing objections and subsequent appeals for the sole purpose of extorting a pay-off.

The Federal Judicial Center has warned courts to "[w]atch out … 'for canned objections filed by professional objectors who seek out class actions to simply extract a fee for lodging generic, unhelpful protests.'" Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 11 (2005). Courts are further cautioned to be "wary of self-interested professional objectors who often present rote objections to class counsel's fee requests and add little or nothing to the fee proceedings." *Id.* at 24.

---

[2] Mr. Bandas' objection was not properly filed with the Court and was subsequently rejected (Docket No. 76). As a result, it is untimely and should not be considered. Plaintiff nevertheless responds to it out of an abundance of caution.

United Stated District Court Judge James M. Rosenbaum described one group of professional objectors as "remoras" who were "loose again." *In re UnitedHealth Group PSLRA Litig.*, 643 F.Supp.2d 1107, 1108 (D. Minn. 2009). The problem has also been discussed by academics:

> "Class action practice in the United States has developed its own cohort of professional objectors: attorneys who enter a case after a settlement is announced, manage not only to object to the settlement but to intervene as counsel on behalf of a class member, and then threaten to disrupt the settlement unless they are given a hefty reward. Their threat is not an idle one. As long as they can intervene, they can appeal the settlement as of right, and during the appeal process, the settlement will be in limbo. Class counsel will not be paid and class members will not receive their benefits. The prospect of delaying a settlement for months or years by taking an appeal is the realistic threat that objectors hold over the heads of the settling parties...."

Geoffrey P. Miller & Lori S. Singer, *Nonpecuniary Class Action Settlements,* 60 Law & Contemp. Probs. 97, 126 n.64 (Autumn 1997).

Objections lacking merit hurt the class. As stated by Alba Conte and Herbert B. Newberg, 5 *Newberg On Class Actions* § 15:37 (4th ed. 2002): "meritless objections tend to delay providing benefits to bona fide and deserving class members inasmuch as settlements commonly do not provide for payment of any benefits until the judgment entered approving a settlement is final and not subject to further appeal." *See also Devlin v. Scardaletti*, 536 U.S. 1, 23 n.5 (2001) (Scalia, J., dissenting) (observing that professional objectors' penchant for filing "canned" briefs and baseless objections often lead to baseless appeals in the quest for a fee).

Here, objector attorney Darrell Palmer[3], representing purported class member Michelle Melton, and objector attorney John Davis[4], representing purported class

---

[3]     Darrell Palmer has filed "canned" objections to proposed settlements in the following cases, among others: *Rodriguez v. West Publishing Corp.*, No. 05-3222 (C.D. Cal. Oct. 9, 2007); *In re Enron Sec. Litig.*, No. H-01-3264 (S.D. Tex. Feb. 1, 2008); *In re Currency Conversion Fee Antitrust Litig.*, No. 01-md-1409 (S.D.N.Y. Feb. 14, 2008); *Wilson v. Airborne Health, Inc.*, No. 07-cv-770 (C.D. Cal. June 4,

(Footnote Cont'd on Following Page)

PLAINTIFF'S RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT

member Dave Denny, have submitted briefs that do not seek to improve the settlement but, rather, as revealed herein, lack merit – duplicating arguments they regularly make in objections to class action settlements.  Indeed, several arguments made by these objectors evidence their failure to even read the settlement agreement.

## IV.   ARGUMENT

### A. The Objectors Have Not Submitted Evidence of Class Membership

Not one of the purported objectors produced adequate evidence of their inclusion in the class, such as telephone records.  The Court's preliminary approval order and the settlement expressly require proof of class membership to be submitted in order to file an objection to the settlement, as does California law.   Settlement Agreement ¶ 34.1; Order Granting Motion for Preliminary Approval of Class Action Settlement (Docket No. 65), ¶ 16.  *See Rebney v. Wells Fargo Bank*, 220 Cal.App.3d 1117, 1132 (1990) (only aggrieved parties have standing to challenge class action settlement).

---

(Footnote Cont'd From Previous Page)
2008); *In re General Motors Dex-Cool Gasket Cases*, No. HG03293843 (Alameda Super. Ct. Aug. 13, 2008); *Salicido v. Iomedix Cold Int'l SRL*, No. BC 387942 (L.A. Super. Ct. Aug. 28, 2009); *Troyk v. Farmers Group, Inc.*, GIC 836844 (S.D. Super. Ct. 2009); *Authors Guild, Inc. v. Google, Inc.*, No. 05 CV 8136 (S.D.N.Y. Sep. 4, 2009); *In re Int'l Rectifier Corp. Sec. Lit.*, No. 07-cv-02544 (C.D. Cal. Jan. 25, 2010); *Gemalas v. The Dannon Co., Inc.*, No. 1:08-cv-00236 (N.D. Ohio May 24, 2010); *In re Vitamins Litig.*, MDL No. 1285 (D.D.C. 2010); *Freidman v. 24 Hour Fitness, USA*, No. CV 06-06282 (C.D. Cal. June 11, 2010); *Hartless v. Clorox Co.*, No. 3:06-cv-02705 (S.D. Cal. Dec. 6, 2010).

[4] John Davis has filed objections similar to that filed here in a host of cases, including *Greenberg v. ETrade Financial Corporation*, No. BC360152 (L.A. Super. Ct. Sep. 16, 2009); *In re Visa CheckMaster Money Antitrust Litigation*, No. cv-96-5238 (E.D.N.Y.); *Hillis v. Equifax*, No. 04-cv-3400 (N.D. Georgia); *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.); *Behr Wood Sealant Cases*, JCCP 4132 & 4138 (San Joaquin Super. Ct.); *In re Homestore.com, Inc. Sec. Litig.*, No. 01-CV-11115 (C.D. Cal.); *In re Florida Microsoft Anti-Trust Litig.*, Nos. 3D04-2051, 3D04-1590, 3D04-1986 (Dist. Ct. of Appeal Florida); *Campbell v. Airtouch Cellular*, No. GIG 751725 (San Diego Sup. Ct.); *Walmart Stores, Inc. v. Visa U.S.A., Inc.*, No. 1:96-cv-05238-JG-JO (E.D.N.Y.); *Rodriguez v. West Publishing Corp.*, No. 05-3222 (C.D. Cal. Oct. 9, 2007).

PLAINTIFF'S RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT

Lacking sufficient evidentiary support for their membership and standing to appear, each of the three objections should be stricken or overruled without further consideration.

### B. The Requested Attorneys' Fees are Reasonable

Each of the objectors argue that the attorneys' fee sought by Class Counsel are too high.

### 1. Bandas Objection

Mr. Bandas fails to offer any law or facts to support his blanket statement that the requested fees are "excessive." This boilerplate, unsupported objection should be overruled. *In re Lorazepam & Clorasepate Antitrust Litig.*, 205 F.R.D. 369, 378 (D.D.C. 2002) (rejecting broad, unsupported objections). As discussed in Plaintiff's application for fees and below, the proposed fees are reasonable under the applicable Ninth Circuit precedent.

### 2. Melton Objection

Ms. Melton proffers objections to the fee request which have no basis in the settlement. She argues the proposed fee "is excessive because it is not based on the actual value provided to the Class..." (Melton objection, p. 2, l. 18-19) and that "it cannot be ascertained whether Class Counsel's requested 21 percent is either an accurate or reasonable percentage until all class members' claims have been tallied." (Melton objection, p. 5, l. 2-5). She suggests that the Court should defer its ruling on Class Counsel's fee motion until the value of claims (and the total payout to the Class) is determined – e.g., until after the September 10, 2011 claims deadline. (Melton objection, p. 6, l. 17-20).

However, there is no reason for the Court to defer its ruling – the final approval hearing is scheduled for September 12, 2011, which is *after the claims deadline*. Moreover, *the settlement is non-reversionary – every penny of it will be paid out regardless of the claims rate*. There are no coupons involved. Both of these

arguments lack any merit and evidence a failure to read the most important terms of the settlement agreement.

Ms. Melton also suggests Class Counsel seeks too large a fee because the proposed 3.2 multiplier is out-of-range compared to the size of the settlement fund. The primary basis for her argument is rooted in her misunderstanding of the settlement structure – that there are coupons involved and the settlement amount will be based on total claims made ("Thus, this case does not entitle the attorneys to such a significant and deferential multiplier, *particularly given Objectors' discussion in Section II(A)* [relating to a coupon settlement and the value of claims made]) (Melton objection, p. 8, l. 15-18) (emphasis added). Ms. Melton's argument is therefore premised upon a misreading of the settlement agreement; her analysis is flawed and should be rejected.

Her simple analysis also ignores Ninth Circuit and Supreme Court precedent addressing the various factors to be used in assessing a fee request. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor [to consider in awarding fees] is the degree of success obtained"); *In re Xcel Energy, Inc.*, 364 F.Supp.2d 980, 994 (D. Minn. 2005) (recognizing risk as an important factor in determining fee award); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) (concluding class counsel should be rewarded for achieving an excellent settlement in a prompt manner); *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (recognizing complexity of the case as an important factor in determining appropriate fee award); *Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994) (finding that the contingent nature of the case should positively impact fee award). Plaintiff's fee application (Docket No. 72, p. 11-17) analyzes these factors in detail.

Put simply, Ms. Melton's analysis fails to present any law or facts which persuasively demonstrate that Class Counsel's requested fee is unreasonable under the circumstances of this case.

PLAINTIFF'S RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT

### 3. Denny Objection

Mr. Denny's argument regarding fees merely echoes the discussion presented by Class Counsel in their fee application: the Ninth Circuit permits either a percentage of the fund computation or a lodestar computation plus a multiplier to determine a *reasonable* fee for Class Counsel; the district court is not bound by either approach and should use its discretion to determine what is reasonable under the circumstances. *Hanlon, supra*, 150 F.3d at 1029. Mr. Denny provides no evidence or argument that Class Counsel is requesting an "excessive" fee; he merely iterates the same case law and fee standards cited by Class Counsel.

Indeed, as addressed by Class Counsel in their fee application, the fee requested by Class Counsel – whether analyzed under either the lodestar approach with a multiplier, or the percentage of the fund approach – results in a reasonable fee which is fair to class members and adequately and fairly compensates Class Counsel for their time, risk, and exceptional results achieved. Class Counsel request the Court award attorneys' fees of $2,000,000, which is 21% of the fund, and represents a 3.2 multiplier of Class Counsel's lodestar.[5] Based on the comprehensive discussion presented in the fee application, this request is fair and reasonable.

### C. Claim Forms Are Necessary to Implement the Settlement and Require Only Information Necessary to Process Claims

Ms. Melton argues the request for private information on claim forms – name, address, phone number, and social security or tax id number – will deter participation. She suggests that "there is no rational basis to request this type of sensitive information other than as a means to dissuade class members from submitting claims." (Melton objection, p. 8, l. 21-27). Mr. Denny suggests that the claims process used in this case was "an unreasonable barrier to recovery." (Denny

---

[5] Class counsel expects that they will indeed spend in excess of the time estimated working with objectors and responding to objections and, if necessary, any appeals of the final judgment; the final multiplier will likely decrease.

objection, p. 9, l. 18-19).  Neither objector presents any legal authority in support of their position and neither of these arguments are persuasive.

The settlement creates a non-reversionary fund; unlike some "claims made, claims paid" settlements where a defendant benefits from a potential reversion, Defendants here have no interest in limiting the total value of claims because the entire Settlement Amount will be paid out regardless.

Moreover, every required piece of information on the claim form was necessary to process claims, especially considering that certain information required to make a claim and determine class membership was solely in the control and knowledge of class members (and required self-identification):

·     Class members must submit their name and address to be written and mailed a settlement check.

·     Because the settlement checks may have exceeded $600 (indeed, based on claims to date, California callers will receive over $600 each), 26 U.S.C. § 6041(a) requires that the payments be reported to the Internal Revenue Service on a Form 1099-MISC.  This form requires a social security number or taxpayer identification number.  Therefore, it was necessary to request this information from claimants.  In fact, not requesting the information at the time of claim submission would have created a logistical nightmare in distributing the settlement funds.[6]

·     With respect to seeking class members' phone numbers and approximate dates of their calls, this information was necessary to allow verification of claims in the event fraudulent claims were suspected.  Moreover, that information should not be difficult for the claimants to provide and, if they had difficultly, they could have contacted the settlement administrator to discuss their options.

---

[6] Class members particularly sensitive about disclosing this information over the internet were permitted to submit a paper claim form.

PLAINTIFF'S RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT

The same is true for requesting from what state each Class Member telephoned Defendants from – to participate in the settlement, they must have called while located in a Covered State, otherwise they are not entitled to the protections of the applicable privacy laws and are not class members. Defendants' records at most might indicate the area code of the person making the call (assuming it was not blocked) but cannot indicate what state class members called from. Therefore, self-identification was necessary for all class members for this element of the claim. Again, class members should have had no difficulty in providing this information.

Finally, Ms. Melton raises concern about transmitting sensitive information over the internet. While GCG, Inc., the settlement administrator, uses progressive security measures to ensure the privacy of information transmitted through the settlement website, any Class Member who requested a paper claim form received one by mail. Indeed, hundreds of claims were submitted in paper form.

The claim forms and claim process were a necessary part of the settlement and only required the minimum information to validate and pay class member claims.

### D. The Notice Was Clear and Complied With Federal Law

Objector Denny contends that the class notice was insufficient for a host of reasons, each of which is easily disposed of.

Notice must be provided to a class in the best way practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely identify:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

As discussed by McLaughlin,

> "The settlement notice does not need to describe every facet of the settlement, or describe in exhaustive detail those features it does describe.  It must contain enough information about the settlement and its implications for participants to enable class members to make an informed decision about whether to be heard concerning the settlement or, if allowed, to opt-out."

2 *McLaughlin on Class Actions* § 6:16 (7th ed.).  *See also Rodriguez, supra*, 563 F.3d at 962-63 (setting forth minimal standards for class notice); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1373-74 (9th Cir. 1993) (same).

> "Clarity and objectivity are of primary importance in describing the key elements in the proceedings so that recipient class members have sufficient information to make intelligent decisions. *A statement that is too detailed may be so incomprehensible and overwhelming to average citizens that they opt out of the suit simply because opting out is the easiest thing to do.*  On the other hand, a notice that gives too little information may not adequately apprise members of their rights and alternatives."

3 *Newberg on Class Actions* § 8:39 (4th ed.) (emphasis added).

> "The standard ... notice required by subdivision (c)(2) must contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment. The class members need not be made cognizant of 'every material fact' before mailing of the notice, nor must the notice be perfectly correct in form....An overly detailed notice would be unduly expensive, confuse class members and 'impermissibly encumber their rights to benefit from the action.'

- 11 -

*In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). *See Krzesniak v. Cendent Corp.*, 2007 WL 4468678, *1 (N.D. Cal. Dec. 17, 2007) (*citing Nissan*).

The law requires a clear and concise explanation of the case and class members' rights with respect thereto; the notice prepared by the parties and approved by the Court does just that. Each form of notice approved by the Court also directs class members to the settlement website, which at all times contained the full settlement agreement and the contact information for the settlement administrator.

Mr. Denny argues that the notice fails to define the term "Authorized Claimant" and does not use a high enough degree of specificity with respect to what information on the claim form is really necessary to make a claim. In the notice, the term "Authorized Claimant" was only used to describe how the settlement payments would be calculated. There was no need for a detailed explanation of the term and, as explained above, notice need not – and should not – be as comprehensive as the settlement agreement. It should not be so detailed and lengthy as to deter participation. It should state all necessary information to advise class members of their rights and options and the consequences thereof. It should not define every term of the settlement agreement. The class notice approved by the Court satisfies the requirements of Rule 23(c)(2)(B).

Mr. Denny's argument, in any case, is moot. All class members who submitted a claim form that has a deficiency that can be corrected will be sent a customized deficiency letter (indicating specifically any errors on their claim form) and will have 30 days to cure. This will provide these class members with ample opportunity to understand exactly what information is necessary to submit their claim.

### E. Mr. Batmanghelich's Proposed Incentive Payment is Reasonable

Mr. Denny argues the service payment sought by Mr. Batmanghelich is excessive and his interests are therefore not aligned with absent class members. Denny has proffered no evidence or law in support of this position.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In contrast, Plaintiff, in his application for a service payment, in his personal declaration, and in the declaration of Kenneth S. Gaines, presents argument and evidence in support of the award of a modest service payment.

The Ninth Circuit supports the award of reasonable service payments. *Rodriguez v. West Publishing Corp.*, *supra*, 563 F.3d at 958-959 ("Incentive awards are fairly typical in class action cases.... and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."). "[A]n incentive award is appropriate if it is necessary to induce an individual to participate in the suit...." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (internal quotations omitted).

Factors to consider in making such an award include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Clark v. American Residential Services LLC*, 175 Cal.App.4th 785, 804 (2009).

A California district court articulated a five factor test for judging when incentive payments should be awarded:

> "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

"In short, the rationale for making enhancement or incentive awards to named plaintiffs is that he or she should be compensated for the expense or risk he has

incurred in conferring a benefit on other members of the class." *Clark, supra,* 175 Cal.App.4th at 806-07.

As detailed at length in Plaintiff's application for his service payment, Plaintiff has contributed time and incurred risk to pursue the claims at issue. He should be rewarded with a modest service payment for his efforts, yielding the class a settlement benefit worth nearly $10 million.

While Plaintiff will refrain from duplicating the argument previously submitted, the facts here clearly support the award of a modest incentive payment under the applicable standards for the following reasons, among others: 1) the proposed service payment is about one tenth of one percent of the Common Fund; 2) eliminating it would yield an additional payment of only about 60 cents per class member; 3) the service payment *includes* Mr. Batmanghelich's settlement payment – he will not receive anything in addition to this payment; 4) Mr. Batmanghelich has endured this litigation for 2 years and the service payment compensates him at the rate of about $416 per month for his efforts; 5) the service payment alone represents a discount on the value of his individual claims, which are potentially worth up to $5,000 per telephone call with Defendants; and 6) class members are receiving an exceptional result from this settlement – the release of very narrow claims in exchange for substantial payments is rarely heard of in the context of consumer class action litigation, especially considering the lack of actual harm sustained by class members.

**F. The Class Definition is Proper**

The objection of Mr. Bandas questions the class definition as "uncertain" and "fail-safe in that it defines the class in terms of an ultimate issue on the merits…" (Bandas objection, p. 1). These arguments are inaccurate and the objection should be overruled.

"[T]he class definition must be precise, objective, and presently ascertainable. The requirement that a class be ascertainable by reference to objective criteria is

rooted in the underlying purposes of the class action device and the dictates of due process." 1 *McLaughlin on Class Actions* § 4:2 (7th ed.)

Newberg states:

> "Definitions … should avoid criteria that are subjective (e.g., a plaintiff's state of mind) or that depend on the merits (e.g., persons who were discriminated against). Such definitions frustrate efforts to identify class members, contravene the policy against considering the merits of a claim in deciding whether to certify a class, and create potential problems of manageability. Similarly, objective terms should be used in defining persons to be excluded from the class, such as affiliates of the defendants, residents of particular states in diversity cases, or persons who have filed their own actions or are members of another class. The judge should consider whether the definition will serve the purpose for which the class is certified (i.e., the resolution of common questions of fact and law in a single proceeding)."

2 *Newberg on Class Actions* § 6:14 (4th ed.) (*citing Manual for Complex Litigation* § 30:14).

A carefully pleaded class definition should describe: (1) a common transactional fact or status predicated on the cause of action; (2) the time span appropriate to the cause of action; and (3) any appropriate geographical scope. *Id.*

The settlement class definition unquestionably meets these criteria. It uses *objective criteria* to determine class membership. One of the risks involved in this case arose from the fact that not all calls were recorded by Defendants, and it would be very difficult to determine who was recorded on a class-wide basis. The settlement class definition eliminated this risk by requiring only that a class member 1) be located in a covered state at the time of the applicable call, 2) have made the call during a specified time frame, and 3) have failed to be informed that their call was being recorded or monitored. These are without doubt objective criteria – class member recollection, which in some cases can be checked against Defendants'

records, can confirm class membership.  The settlement class definition does not require that the class member's call have been recorded because the class member would not know whether or not he or she had been recorded, and Defendants' records did not readily permit the determination of whether a class member had been recorded.

Indeed, the concession by Defendants to leave recording out of the class definition was an important part of the settlement because it resulted in objective criteria known to the class members being used to determine *both* class membership and establish entitlement to a settlement payment.  The class definition is narrowly tailored to encompass only those individuals to whom Defendants potentially face liability and therefore who are entitled to recover under the settlement.

Further, Mr. Bandas is apparently probing for any conceivable deficiency as he questions what "in" means in the context of the class definition.  Its meaning is obvious – were you physically located "in" a covered state when the relevant phone call took place?  His other proffered interpretations make no sense in light of the clear definition and the facts of this case.  (Bandas objection, p. 1).

The settlement class definition is proper and should be upheld.

## G. The Settlement Amount is Fair and Adequate and its Apportionment Among Class Members is Fair

Plaintiff has devoted substantial argument in his motion for preliminary approval and motion for final approval addressing the fairness of the terms of the settlement, discussions which he need not restate here.  Objector Denny contends the financial relief to class members is inadequate because, based on a 100% recovery rate for claiming class members, the settlement consideration is about 20% of the maximum obtainable ($9.48m v. $47m).  What Mr. Denny fails to understand is that according to the testimony of Defendants, not all persons who placed calls to representatives on behalf of Sirius were recorded and it would be very difficult and time consuming to determine which callers were actually recorded.  In fact, the

evidence indicated that only around half of the telephone calls were recorded during the relevant period. Given this evidence, Mr. Denny's assumption that all persons who submitted settlement claim forms would be entitled to recover from Defendants if this case proceeded to trial is simply incorrect.

Indeed, Mr. Denny attempts to assess the fairness of the settlement in a vacuum by ignoring the extensive risks Plaintiff and class members faced, both at certification, on the merits, and post-trial. As previously detailed extensively by Plaintiff, these risks were substantial and the relief recovered – through arms' length, hard fought negotiations – represent a substantial recovery on claims for statutory penalties where there was no actual harm.

Mr. Bandas argues a "substantial conflict of interest" exists because non-California class members will receive smaller settlement payments in light of their weaker claims. His argument is flawed, however, because California class members are not being rewarded for their stronger claims, but rather, for their *more valuable claims* which are entirely due to the statutory damages available under the applicable law.

Under the terms of the proposed settlement, California class members are entitled to an amount up to $5,000 each, while Class members in other covered states are entitled to up to $1,000 each. This allocation reflects the minimum statutory damages recoverable under the statutes of each of the five states. "Such differences in settlement value do not, without more, demonstrate conflicting or antagonistic interests within the class." *In re Pet Food Products Liability Litig.*, 629 F.3d 333, 346 (3d. Cir. 2010). In fact, "varied relief among class with differing claims in class settlements is not unusual." *Id.*; *see also Petrovic v. Amoco Oil Corp.*, 200 F.3d 1140, 1146 (8th Cir. 1999) ("[A]lmost every settlement will involve different awards for various class members."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2004) ("We agree with the District Court that the fact that there may be variations in the rights and remedies available to injured class members under the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

various laws of the fifty states in this matter does not defeat commonality and predominance."). *Cf. Hanlon, supra*, 150 F.3d at 1022-1023 ("the idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims").

No conflict is created between Plaintiff, Class Counsel, and Class Members despite the varying allocation of settlement payments between Class Members from different states.  There is simply a difference in maximum damage awards which class members from different states could recover under the claims alleged in the Action; such a difference in damages does not defeat class certification, nor does the settlement's fair and rational apportionment among class members create a conflict. *In re Pet Food Products Liability Litig., supra*, 629 F.3d at 346; 1 *McLaughlin on Class Actions* § 4:19 (7th ed.) ("[I]f there is a sufficient nucleus of common questions concerning liability, the fact that damages will need to be calculated on an individual basis does not defeat typicality or otherwise bar class certification.").

The purpose of a settlement is to compromise disputed claims; this settlement and its allocation among class members does just that.  It represents a fair, rational, and reasonable method to allocate settlement funds among Class Members.

**H. The Release is not Overly Broad**

Mr. Denny objects that the release is overly broad, but never explains how the release is overbroad.  In fact, the release is narrowly-tailored to the facts of this case and the claims asserted herein.  It provides that class members are releasing their claims against Defendants

> "which were asserted in the Action or are related to the
> claims asserted in the Action, including, without limitation,
> any and all claims relating to the transactions, actions,
> conduct or events that are the subject of the Action, and any
> and all claims arising out of the institution, prosecution,
> assertion, settlement or resolution of the Action, and any
> [and] all claims relating to the recording and/or monitoring
> of telephone calls[.]"

Amended Settlement Agreement, § 14.1.  Since the scope of the release is limited to claims related to the claims asserted in the action, it is fair and reasonable.  *See Sandoval v. Tharaldson Employee Management, Inc.*, 2010 WL 2486346 at *11 (C.D. Cal. Jun. 15, 2010).  In addition, given that Mr. Denny does not explain how the release is overbroad, his objection to the release should be overruled.

## I.   The Parties Have Made Substantial Efforts to Accept Potentially Defective Claim Forms

As with any administration with a substantial number of claimants, several claims received were defective because they were not completely filled out (e.g., check boxes unmarked, no signature, no social security number).  These are curable defects.  Some submitted claim forms evidenced non-class membership – a "non-curable defect" (e.g. not in a covered state at time of call).

Every single claimant who submitted a claim form with a curable defect is receiving a letter advising them of the defect and providing them with 30 days to cure it.  Some "defects" – such as those missing the date of call, the telephone number from which the call was made, or the Sirius account number – will be accepted with potential verification through Defendants' records.

In summary, no legitimate claim will be denied without ample notice to the class member to cure any deficiency capable of being cured.

## J.   Melton's Request for an Incentive Fee Should be Denied

Mr. Palmer requests that Ms. Melton be awarded an incentive fee of an unspecified amount for "her service as a named representative of Class Members in this litigation."   No legal authority is provided in support of her request.  Ms. Melton's objection has provided no benefit or service to Class Members.  The request should be denied.

\\

\\

\\

- 19 -

## V.   IN THE EVENT THAT OBJECTIONS ARE OVERRULED, THE COURT SHOULD REQUIRE THAT THE OBJECTORS POST A BOND IN ORDER TO APPEAL

In the event that the Court overrules the objections, the Court should require that the objectors post a bond if they intend to appeal the settlement. The Court has discretion to require such a bond under Federal Rule of Appellate Procedure 7. Requiring such as bond is appropriate where, as here, it is unlikely for the objections to prevail on appeal. *See Wells Fargo Loan Processor Over-Time Pay Litigation*, 2011 WL 3352460 at *10 (N.D. Cal. Aug. 2, 2011).

## VI.   CONCLUSION

The three objections to the settlement lack merit and should be overruled. Plaintiff's motion for final approval of the settlement and application for attorneys' fees and costs, plaintiff's service payment, and payment of settlement administration expenses should be granted.

DATED:  August 22, 2011

Respectfully submitted,
GAINES & GAINES,
A Professional Law Corporation


By:   /s/  Kenneth S. Gaines
   KENNETH S. GAINES
   DANIEL F. GAINES
    Attorneys for Plaintiff Kambiz
    Batmanghelich and Class Counsel

PLAINTIFF'S RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT

# PROOF OF SERVICE

## UNITED STATES DISTRICT COURT OF CALIFORNIA

## CENTRAL DISTRICT

**CASE NAME: KAMBIZ BATMANGHELICH, on behalf of himself and all others similarly situated, and on behalf of the general public vs. SIRIUS XM RADIO, INC., a Delaware corporation, STREAM INTERNATIONAL INC., a Delaware corporation, and DOES 3 through 50, inclusive, CASE NUMBER: CV 09-9190 VBF(JCx)**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 21550 Oxnard Street, Suite 980, Woodland Hills, California 91367

On August 22, 2011, I served the foregoing document(s) described as:

**PLAINTIFF'S RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT**

in this action by placing a true copy thereof in a sealed envelope addressed as follows:

Darrell Palmer
Janine R. Menhennet
Law Offices of Darrell Palmer
603 North Highway 101, Ste A
Solana Beach, California 92075
*Attorneys for Objector Michelle Melton*

Edmund F. Bandas
200 Lake Road, # 1008
Belton, Texas 76513
*Objector in pro per*

☐ **BY NOTICE OF ELECTRONIC FILING.** The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(D).

☐ **FEDERAL.** I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 22, 2011, at Woodland Hills, California.

Wendy A. Shore

PLAINTIFF'S RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT